FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 JUL 16 PM 2:19
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 112-180 |
| | ) | |
| SANQUAN YKING SULLIVAN | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has charged Defendant Sanquan Yking Sullivan with one count of possession with intent to distribute an amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1)(b)(1)(C); one count of possession with intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1)(b)(1)(B); two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). (Doc. no. 1.) The case is currently before the Court because Sullivan has filed a motion to suppress all evidence obtained as a result of the search of a residence located at 1511 Clay Street, Augusta, Georgia, which occurred on September 29, 2010. (Doc. nos. 19, 27.[1]) The government opposes this motion.

---

[1] Sullivan filed a preliminary motion to suppress, and, upon prompting from the Court, he filed a particularized motion pursuant to Loc. Crim. R. 12.1. (See doc. nos. 19, 25, 27.) Although the Court's recommendation to deny the request for suppression applies to

(Doc. no. 34.). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED** without an evidentiary hearing.

I.  FACTS[2]

On September 29, 2010, officers with the Richmond County Sheriff's Office searched a residence located at 1542 Chestnut Street, Augusta, Georgia, pursuant to a search warrant signed by the Honorable Richard A. Slaby, Chief Judge, Richmond County State Court. (Doc. no. 27-1, pp. 1-4.) During the search, the officers found 34 grams of crack cocaine, 42 grams of powder cocaine, 10 Hydrocodone pills, and a quantity of liquid Codeine. (Id. at 1.) In addition, Sullivan and another individual were at the Chestnut Street residence when the search was conducted, and the officers arrested both of them on narcotics charges. (Id.) Sullivan's green BMW was parked on the street outside the Chestnut Street residence, and the officers found the key to the BMW inside the residence. (Id. at 10-11.) In addition, the officers found a utility bill with the name "Crystal Taylor" and an address listed as 1511 Clay Street, Augusta, Georgia. (Id.)

Later the same day, Investigator James Swint with the Richmond County Sheriff's Office applied for a warrant to search the residence at 1511 Clay Street. Investigator Swint submitted an affidavit in support of his application for the search warrant in which he attested that two independent sources had recently informed him that Sullivan was in

---

Sullivan's preliminary and particularized motions, for ease of reference, the Court will refer to these two motions as a single motion to suppress.

[2]The facts are based on the filings in the record by Sullivan and the government. As discussed in detail below, Sullivan did not come forth with sufficient facts to warrant an evidentiary hearing.

2

possession of cocaine, which he stored at the Clay Street residence. The first source was an anonymous female who called Investigator Swint within the 30-day period preceding the warrant application. The anonymous female stated that, based on the fact that she had previously been in a romantic relationship with Sullivan, she knew that Sullivan kept large amounts of cocaine and the proceeds from narcotics sales at the Clay Street residence. (Id.)

The second source was an individual that Investigator Swint identified as a reliable confidential informant who had assisted him "in making numbers of drug arrests resulting in the seizure of trafficking amounts of cocaine, amounts of marijuana and United States currency." Investigator Swint stated in the affidavit that this confidential informant had contacted him within the 15-day period preceding the warrant application and had told him that Sullivan kept cocaine inside the target residence. (Id.)

In addition, Investigator Swint stated in the affidavit that he was familiar with Sullivan and knew that he drove a green 2003 BMW. Investigator Swint further attested that he had seen Sullivan in the vehicle within the area of the Clay Street residence on several occasions and had seen the vehicle parked at the residence within two weeks of the date of the warrant application. Investigator Swint noted that the vehicle had been seen with large chrome wheels that had green markings and that, during recent surveillance of the residence, he had not seen any other vehicles there. (Id.)

Investigator Swint also attested in the affidavit that Sullivan and his green BMW had been located earlier that day during the search of the Chestnut Street residence, along with the utility bill for the Clay Street residence. Furthermore, Investigator Swint reported in the affidavit that he had gone to the Clay Street residence and looked through a window, at

which time he observed the chrome wheels with green markings inside the residence and noted that "there was no furniture visible within the residence." (Id.)

The Honorable Sheryl B. Jolly, Richmond County Superior Court Judge, authorized the search warrant for the Clay Street residence, which Investigator Swint and other officers proceeded to execute the same day. The search of the Clay Street residence resulted in the discovery of, among other things, over a kilogram of cocaine, a .38 caliber revolver, and four chrome tires with green markings, the latter of which was found in a part of the house designated as a "side room." (Id. at 5-9, 12-13.)

## II. DISCUSSION

### A. Sullivan Is Not Entitled to an Evidentiary Hearing

#### 1. Hearing Not Warranted Under Franks v. Delaware

To the extent that Sullivan's motion to suppress challenges the lawfulness of the search based on alleged misrepresentations in the search warrant affidavit, he must satisfy the dictates of Franks v. Delaware, 438 U.S. 154 (1978), to obtain an evidentiary hearing on the matter. He has not done so.

The Court starts with the recognition that the affidavit supporting a search warrant is presumed to be valid. Franks, 438 U.S. at 171. Nevertheless, in Franks, the Supreme Court held that facially valid search warrant affidavits may be challenged if: (1) the affidavit contains intentionally or recklessly false statements, and (2) the statements are material in the sense that they were necessary to the finding of probable cause. Id. at 171-72. Insignificant and immaterial omissions or misrepresentations will not invalidate a warrant and do not require an evidentiary hearing. United States v. Jenkins, 901 F.2d 1075, 1080

4

(11th Cir. 1990); see also United States v. Gamory, 635 F.3d 480, 490 (11th Cir. 2011) ("If ... probable cause still exists once the false statement is removed from the warrant, there is no need to hold a Franks hearing."); United States v. Steiger, 318 F.3d 1039, 1046 (11th Cir. 2003) ("To justify suppression of evidence seized under a warrant, the alleged deliberate or reckless failure to include material information in the affidavit must conceal information that would defeat probable cause."). To obtain a hearing to challenge alleged misrepresentations in a warrant application, a defendant must make a substantial preliminary showing that meets the following standard:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Jenkins, 901 F.2d at 1080 (quoting Franks, 438 U.S. at 171). The "substantial preliminary showing" needed to demonstrate entitlement to an evidentiary hearing constitutes a demanding threshold requirement that "is not lightly met." United States v. Arbolaez, 450 F.3d 1283, 1294 (11th Cir. 2006).

Here, Sullivan asserts that "[t]he search warrant affidavit contains false information" because "Investigator Swint states that furniture was not visible within the Clay Street residence," whereas "furniture was found within the residence" when it was later searched pursuant to the search warrant. (Doc. no. 27, p. 11.) Unfortunately for Sullivan, this assertion falls well short of satisfying the standard for demonstrating entitlement to an

5

evidentiary hearing. As the government persuasively argues, Investigator Swint's statement that there was no furniture visible in the house when he looked through the window is not inconsistent with the fact that furniture was later found in other parts of the house when it was searched. (See doc. no. 34, pp. 6-7.) Sullivan provides no indication, for example, that there was furniture that Investigator Swint must have been able to see by looking through the particular window that he looked through. Therefore, Sullivan's assertion regarding the furniture fails to provide any sort of "allegation[] of deliberate falsehood or of reckless disregard for the truth." See Franks, 438 U.S. at 171.

Furthermore, Sullivan fails to explain what impact the presence or absence of furniture in the house has on the probable cause determination in this case. (See doc. no. 27, pp. 11-12.) As explained below, excluding the statement about the lack of visible furniture, Investigator Swint's affidavit provides sufficient information to support a finding of probable cause. See infra Part II.B. Therefore, Sullivan fails to show that the statement about the furniture is material in the sense that it was necessary – or even especially important – to the finding of probable cause. See Franks, 438 U.S. at 171-72.

Sullivan also asserts that "[i]t was reckless to swear before the search warrant issuing judge that Investigator Swint knew that there was cocaine and currency within the home on 1511 Clay Street." (Doc. no. 27, p. 12.) However, Investigator Swint did not swear to any such knowledge in his search warrant affidavit. Rather, he attested that he "believe[d]," based on the information outlined in the affidavit, that cocaine and currency were being stored in the Clay Street residence. As explained below, the Court concludes that the information in the affidavit provided probable cause to believe that cocaine or currency

6

would be found at the Clay Street residence. See infra Part II.B. As a result, the Court rejects Sullivan's apparent contention that Investigator Swint acted with reckless disregard for the truth in stating that he believed cocaine and currency would be found there.

In sum, based on the standard set forth in Franks and its progeny, the Court finds that Sullivan has failed to show that he is entitled to a hearing on his motion to suppress.

### 2. Hearing Not Warranted on Other Issues

Sullivan is likewise not entitled to an evidentiary hearing on the issues that do not fall within the previously discussed Franks criteria. While the motion to suppress complies with Local Criminal Rule 12.1, that rule only sets the parameters of how to properly present a motion. The decision to grant or deny a request for an evidentiary hearing on a motion to suppress is left to the Court's discretion. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000); United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (*per curiam*). "[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion." United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994) (affirming denial of a motion for evidentiary hearing on motion to suppress) (citation omitted). Thus, the burden is upon the defendant to allege facts that would, if proven true, entitle him to relief. Lewis, 40 F.3d at 1332. A district court should grant a request for an evidentiary hearing when the moving papers, including the affidavits, are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (quoting United States v. Poe, 462 F.2d 195, 197 (5th Cir. 1972)).

Here, as discussed in detail below, the facts alleged in the instant motion, even if proven, would not entitle Sullivan to relief, and the moving papers fail to establish that a substantial claim is presented. Therefore, Sullivan is not entitled to an evidentiary hearing on his motion to suppress.

## B. Probable Cause Properly Established

Sullivan contends that the search of the Clay Street residence violated his Fourth Amendment rights because the search warrant affidavit "does not state facts that justify any conclusion that contraband would be found on the premises."[3] (Doc. no. 27, pp. 4-10.) In particular, Sullivan argues that Investigator Swint engaged in an unlawful warrantless entry prior to applying for the search warrant when he went to the Clay Street residence and looked through a window. According to Sullivan, the observations based on that search should therefore be excluded from the probable cause determination. Sullivan also asserts that the affidavit's hearsay accounts from the anonymous female and confidential informant are insufficient to establish probable cause, and he argues that the affidavit failed to establish a connection between him, the residence, and criminal activity. (See id.) In addition, Sullivan maintains that the search warrant affidavit contains false information, as discussed above, with respect to the absence of furniture in the residence and Investigator Swint's belief that cocaine and currency would be found there. See supra Part II.A.

---

[3]Sullivan also argues that he had an expectation of privacy in the Clay Street residence. (Doc. no. 27, pp. 3-4.) The Court need not recount the details of this contention, however, as the government agrees that Sullivan had an expectation of privacy in the residence. (See doc. no. 34, p. 3.)

8

In response, without conceding that Investigator Swint acted unlawfully by going to the house and looking through the window, the government asserts that, even if that conduct was improper, the search warrant is nevertheless sufficient because the remaining information in the affidavit, including that provided by the informants, is sufficient to support a finding of probable cause. (Id. at 4-6.)

For the reasons explained below, the Court concludes that the government has the better argument.

### 1. Probable Cause Standard

Whenever a search warrant application is presented to a judicial officer, the judicial officer must

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (*per curiam*) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." (citation omitted)). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). The Court is mindful, however, that "probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal

9

technicians, act.'" United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting Gates, 462 U.S. at 241). Moreover, these probabilities need not come from direct observation but may be inferred from the particular circumstances at issue.[4] United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990). "[P]robable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts...." Gates, 462 U.S. at 232.

Also, sufficient information must be presented to the judicial officer to allow for the exercise of independent judgment; the judicial officer cannot simply ratify the conclusions of others. Gates, 462 U.S. at 239. However, common sense must be employed when reading the affidavit, United States v. Ventresca, 380 U.S. 102, 108 (1965), and the Court is guided by the principle that the affidavit supporting a search warrant is presumed valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). A court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination. United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).

---

[4]Notably, probable cause may be based on evidence that would not be legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311-12 (1959).

## 2. Probable Cause as to the Search of the Clay Street Residence

Upon examination of the totality of the circumstances relevant to the instant motion, the Court concludes that Judge Jolly had a substantial basis for concluding that probable cause existed to issue the search warrant. In making this determination, the Court assumes, without deciding, that Sullivan is correct in asserting that Investigator Swint engaged in an improper warrantless entry when he went to the Clay Street residence, looked through the window, and saw tires that had previously been seen on Sullivan's car prior to applying for the search warrant.[5] Under this assumption, the relevant inquiry is whether, taking away the information obtained from the initial warrantless entry, the affidavit nevertheless provides sufficient information to support a probable cause finding. United States v. Chaves, 169 F.3d 687, 692-693 (11th Cir. 1999) ("[W]here . . . the search warrant affidavit is based on information acquired as a result of an illegal entry, we must look to whether the other

---

[5]Sullivan asserts that Investigator Swint's pre-warrant entry was unlawful because, given that Sullivan saw chrome wheels later found in a side room at the residence, "[i]t is abundantly clear under the law that Investigator Swint was within the curtilage when he looked within a window at the home." (Doc. no. 27, p. 10.) The Court finds this question to be far from clear based on the materials provided by the parties. As Sullivan suggests, the protections offered by the Fourth Amendment to dwellings typically extend to curtilage, which has been defined as "the area immediately surrounding a dwelling house." United States v. Dunn, 480 U.S. 294, 300 (1987). However, Sullivan has not shown that it was impossible for Investigator Swint see through the window into the "side room" without entering the curtilage. That is, the fact that the tires he saw were later found in a part of the house described as a "side room" (see doc. no. 27-1, p. 8) does not mean that Investigator Swint could not see through a window into that room from the public street, or from some part of the premises outside the curtilage.

In any event, the Court need not determine whether Investigator Swint in fact entered into the curtilage in looking through the window because it determines, as explained below, that Sullivan is not entitled to suppression even if Investigator Swint did engage in an unlawful warrantless entry in the manner alleged.

11

information provided in the affidavit is sufficient to support a probable cause finding. If so, suppression is not required . . . ." (citation omitted)).

Here, the remaining information in Investigator Swint's affidavit supports the conclusion that probable cause existed to believe that contraband would be found at the Clay Street residence. First, the affidavit indicates that Investigator Swint had recently received an anonymous tip that Sullivan had cocaine and the proceeds from narcotics sales in at the Clay Street residence. (Doc. no. 27-1, p. 10.) The affidavit provides the individual's basis of knowledge, indicating that her past involvement in a romantic relationship with Sullivan gave her access to the knowledge that he kept cocaine and drug money at the residence. (See id.) The affidavit does not demonstrate the veracity of this anonymous informant. "However, 'when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.'" Martin, 297 F.3d at 1314 (quoting United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000)); see also Florida v. J.L., 529 U.S. 266, 270 (2000) (noting that corroboration may bolster the reliability of an anonymous tip that does not demonstrate the informant's basis of knowledge or veracity); Craig v. Singletary, 127 F.3d 1030, 1046 (11th Cir. 1997) (*en banc*) (recognizing the significance of independent corroboration of an anonymous tip in determining whether probable cause existed on the basis of an informant's assertions). In this instance, independent corroboration of the anonymous female's tip exists in the form of a reliable

confidential informant telling Investigator Swint within the same time period that Sullivan kept cocaine inside the Clay Street residence.[6] (See doc. no. 27-1, p. 10.)

Also, contrary to the argument advanced by Sullivan, the Court finds that the information provided in the affidavit established a sufficient connection between Sullivan, his criminal activity, and the residence to be searched. As noted previously, the anonymous tip and the statement from the confidential informant indicated not just that Sullivan possessed cocaine, but that he kept it at the Clay Street residence. Furthermore, the affidavit specifies that Investigator Swint was familiar with Sullivan and knew that he drove a green 2003 BMW. Investigator Swint further attested that he had seen Sullivan in the vehicle within the area of the Clay Street residence on several occasions and had seen the vehicle parked at the residence within two weeks of the date of the warrant application. Investigator Swint also attested in the affidavit that Sullivan and his green BMW had been located earlier that day during the search of the Chestnut Street residence, along with the utility bill for the Clay Street residence. (Id. at 10-11.) This information, taken in the aggregate, amply demonstrates a sufficient connection between Sullivan, his criminal activity, and the Clay Street residence.

---

[6]Notably, the affidavit provides facts substantiating the veracity of the confidential informant, including his history of providing reliable information in the past. (See doc. no. 27-1, p. 10.) While the affidavit does not indicate the confidential informant's basis of knowledge, that does not prevent the use of the information provided by the confidential informant to independently corroborate the information provided by the other source. See Gates, 462 U.S. at 244-245 ("It is enough, for purposes of assessing probable cause, that '[corroboration] through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" (quoting Jones v. United States, 362 U.S. 257, 269, 271 (1960))).

Furthermore, for the reasons set forth above, the Court rejects Sullivan's contention that the search warrant affidavit contains false information relating to the absence of furniture or Investigator Swint's belief that cocaine and currency would be found in the residence. See supra Part II.A.

In sum, based on the totality of the circumstances, the Court concludes that probable cause existed to support the issuance of the search warrant by Judge Jolly. As a result, Sullivan is not entitled to suppression of the evidence seized during the search of the Clay Street residence carried out pursuant to that warrant.

### C. Good Faith Exception

Even if the Court had determined that probable cause to support the issuance of the warrant had not been established, the evidence discovered as a result of the execution of the contested search warrant would be admissible under the "good-faith" exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984).

Sullivan argues that the good faith exception to the exclusionary rule does not apply because "the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Doc. no. 27, pp. 11-14 (quoting Leon, 468 U.S. at 923).) The government contends that the Leon good faith exception applies in this case because, even if the warrant was deficient, Investigator Swint's "affidavit contained *sufficient indicia of probable cause* to enable a reasonable officer to execute the warrant thinking it valid." (Doc. no. 34, p. 9.) The government has the better argument.

"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated.'" United States v. Jones, 565 U.S. ___, 132 S. Ct. 945, 949 (2012) (quoting U.S. Const. amend. IV). The judicially created remedy known as the exclusionary rule acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search. United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002). However, under Leon, the good-faith exception allows the introduction of evidence in the prosecution's case in chief that is "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." Leon, 468 U.S. at 913. The Leon Court explained that the good-faith exception to the exclusionary rule was appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. Thus, under Leon, the question becomes whether the officers executing the warrant reasonably relied on Judge Jolly's determination of probable cause. See id. at 913; see also United States v. Herring, 492 F.3d 1212, 1215 (11th Cir. 2007) ("[T]he exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant.").

Under Leon, there are four scenarios under which the good-faith exception to the exclusionary rule would not apply. The exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Leon, 468 U.S. at 923. Nor does the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role such that no reasonably well trained officer would rely on the warrant. Id. The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,"

and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid. Id.

Here, there is no suggestion or evidence that Judge Jolly "wholly abandoned" her detached and neutral role in issuing the warrant, or that the warrant was in any way "facially deficient" such that the executing officers could not reasonably presume its validity. The Court has already rejected Sullivan's contention that Investigator Swint provided false information in the search warrant affidavit. See supra Part II.A. Thus, unless the warrant was so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable, the good faith exception could be applied in this case. See Leon, 468 U.S. at 923.

As set forth above, there were sufficient facts set forth in the affidavit that supported a finding of probable cause, including the information from the anonymous source and the confidential informant; Investigator Swint's personal knowledge that Sullivan drove a green BMW that he had seen at the Clay Street residence before; and the fact that Sullivan and his green BMW had been located earlier that day in the search of the Chestnut Street residence, along with the utility bill for the Clay Street residence. See supra Part II.B. Moreover, even if Sullivan could show probable cause was lacking because of the purported lack of information showing veracity and basis of knowledge with respect to the anonymous source and confidential informant, that would not justify finding that the officers executing the warrant were unreasonable in relying on the warrant based on the information from those sources. See Martin, 297 F.3d at 1314 (finding good faith exception applied based, in part,

on officers' reliance on information provided to them by informants that they later corroborated). Accordingly, it was not unreasonable to believe that probable cause existed.

In sum, the Court concludes that even if probable cause to support the issuance of the warrant had not been established, a position discredited above, see supra Part II.B, the evidence discovered as a result of the execution of the contested search warrant would be admissible under the good-faith exception to the exclusionary rule set forth in Leon.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED** without an evidentiary hearing. (Doc. nos. 19, 27.)

SO REPORTED and RECOMMENDED on this 16th day of July, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE